UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES EARLYWINE,<br>　　　　　　　　　Plaintiff,<br>v.<br>USAA LIFE INSURANCE COMPANY,<br>　　　　　　　　　Defendant. | Case No.: 3:17-CV-328-CAB-NLS<br>**ORDER GRANTING SUMMARY JUDGMENT**<br>[Doc. No. 31] |

This matter is before the Court on Defendant's motion for summary judgment on the ground that Plaintiff's claims are time-barred. The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. As discussed below, the motion is granted.

**I.　Background**

Defendant USAA Life Insurance Company ("USAA") issued a universal life insurance policy ("Policy") effective August 17, 1990 to Plaintiff's now-deceased husband, William J. Earlywine. William was 54 at the time. Plaintiff Dolores Earlywine was the designated beneficiary of the Policy. At the time the Policy was issued, USAA allegedly represented to Plaintiff and her husband that it would have a level quarterly premium of $576 through age 95.

In 2001, the Earlywines contacted USAA to ask about missing a premium payment

on the Policy. [Doc. No. 7 at ¶ 17.] USAA's representative told them that missing payments would be "no problem." [*Id.*] The FAC admits that this representation is contradicted by the terms of the Policy. [*Id.* at ¶ 18.] In reality, missing premium payments would result in a reduction in the cash value of the Policy, which would require increased premium payments in the future to avoid cancellation of the Policy before William turned 95. [*Id.*]

Eventually, the premium payments on the Policy increased, and the Earlywines were unable to pay increased premiums. [*Id.* at ¶ 22.] On September 28, 2012, William sent a letter to USAA, stating:

> August 13, 2012 we received a letter from USAA informing us that we are dangerously close to maturity, and that our policy will expire May 17, 2013! I was shocked, as we believed we had a life insurance policy that ends with death! Called USAA San Antonio, 1-800-245-9359 and talked to Damon Estrada. I asked what does life mean and what does maturity mean? His explanation is clear, I did not have a life insurance policy. After 22 years and approximately $40,000.00 later, I am learning that the sales agent misinformed and sold us what we now believe to be a fraudulent policy, which at the time it should have been clear to the agent we could not afford!

> USAA never informed us that the payments would increase as I aged. The home office recommended my wife and I make an appointment with a USAA representative in San Diego. We saw Jason Proctor, September 7th and September 21st 2012. He was very helpful. We went over our payment record and explained the payments missed. In 2001 my wife was diagnosed with lung cancer and a brain tumor at City of Hope. 2002 and 2003 were not my first priority at that time. We tried to play catch up through the years. Jason explained that the IRS will not allow insurance companies to accept retroactive lump payments. In Jason's conversation with the home office Sept. 7, 2012 decision was made. We could resume $576.00 payments quarterly but the age limit would be reduced to age 87. Ten days later written material came from USAA home office that did not reflect our previous meeting of Sept. 7, 2012. We made an appointment with Jason Proctor, Sept. 21, 2012 at which time he explained USAA wants payments of $8,000.00 yearly to age 87. Either accept those conditions or the policy expires in 2013, which I can not afford on our fixed income!

> USAA is forcing us out. Now we will not have a life insurance policy and the monies we invested in good faith in a policy we opted for life, perhaps gone!

We strongly feel that USAA owes us restitution!

[Doc. No. 31-3 at 33-34.]

On October 23, 2012, USAA sent William a letter stating that the Policy would insure him up to age 78 based on payment of a quarterly premium of $576. The letter also offered him four different options for extending the policy to age 80 or later. [Doc. No. 31-3 at 39-40.] In January 2016, the Policy lapsed. William died on April 23, 2016.

On January 18, 2017, Plaintiff filed this lawsuit in San Diego County Superior Court asserting six claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) negligent misrepresentation; (4) fraud; (5) rescission; and (6) unfair business practices under California Business and Professions Code section 17200. [Doc. No. 1 at 8-16.] Defendant USAA timely removed the complaint to this court and filed a motion to dismiss the negligent misrepresentation and fraud claims. In response to the motion, Plaintiff filed a first amended complaint ("FAC"), which asserted the same six claims. [Doc. No. 7.] USAA again moved to dismiss the negligent misrepresentation and fraud claims, and the Court granted the motion, dismissing the claims with prejudice. [Doc. No. 12.] USAA now moves for summary judgment on the remaining claims on the grounds that they are time-barred.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable judge or jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### III. Discussion[1]

"In a federal diversity action brought under state law, the state statute of limitations controls." *Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir. 1987). Therefore, because this Court's jurisdiction rests on diversity of citizenship and all of Plaintiff's claims are under California law, California's statute of limitations law applies here.

In its motion, USAA argues that the statutes of limitations for the breach of contract, rescission, and Section 17200 claims are each four years, and that that the statute of limitations for the breach of the covenant of good faith and fair dealing is two years. *See* Cal. Code. Civ. Proc. § 337(1) (breach of contract); Cal. Code. Civ. Proc. § 337(3) (rescission); Cal. Bus. Prof Code § 17208; Cal. Code. Civ. Proc. § 339(1) (breach of covenant of good faith and fair dealing). USAA then argues that the statute of limitations for each claim began to run no later than Fall 2012, when the Earlywines contacted USAA about the terms of the Policy and at which point the undisputed facts establish that the Earlywines were aware that the Policy would not provide insurance until William turned 95 without any increase in premium payments. Thus, according to USAA, because Plaintiff did not file the original complaint here until January 2017, all four claims are time-barred.

In her opposition, Plaintiff does not dispute the applicable statutes of limitations or any of these facts. Rather, she argues that the statutes did not begin to run until January 17, 2016, when USAA cancelled the Policy. Thus, according to Plaintiff, all of her claims were filed within the applicable statute of limitations period.

"Generally speaking, a cause of action accrues at the time when the cause of action

---

[1] With its opposition, Plaintiff filed boilerplate objections to the form of evidence USAA included with its motion, but did not dispute the legitimacy of the evidence itself identify any reason why USAA would not be able to admit such evidence at a trial in this case, or dispute the facts supported by this evidence. Accordingly, Plaintiff's objections are overruled.

is complete with all of its elements." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1317 (Cal. Ct. App. 2007) (internal quotations omitted). "In the specific context of insurance policies, courts have found that even though the time for an insurer to pay out on the policy has not yet arrived, an insurer nonetheless breaches the policy, and triggers the statute of limitations, when it demands that the insured makes payments inconsistent with the insured's understanding of the policy terms." *Kersh v. Manulife Fin. Corp.*, 792 F. Supp. 2d 1111, 1119 (D. Haw. 2011). "That the breach of contract claim accrues upon the insurer's inconsistent statements, as opposed to when performance is ultimately due, makes common sense because it allows the insured, as opposed to his heirs, to bring suit, and also allows a suit to commence while evidence and witnesses are still available." *Id.* at 1120.

The holding in *Kersh* is persuasive and the facts here are not materially distinguishable. All four of Plaintiff's claims are premised not on failure to pay the death benefit when William died, but on breaches of oral representations by USAA representatives with respect to the terms of the Policy, or on a breach of the Policy itself by requiring premium payments inconsistent with the Earlywines' understanding that premiums would remain level through age 95. In other words, Plaintiff has not alleged that the terms of the Policy entitle her to the $100,000. Instead, she has argued that she and her husband were promised a policy with a $100,000 death benefit that would have a level premium until William turned 95, and paid premiums believing that they had received such a policy, when in fact the Policy they received did not have level premiums and would expire before William turned 95 unless the premiums increased. Thus, the breach occurred when the Policy was actually issued to William Earlywine, but the Earlywines may not have discovered the breach itself, or any injury as a result of the breach, until USAA told them in 2012 that their premiums were going to increase. Any claims arising out of these facts accrued no later than when USAA told them that they would have to increase their premium payments to avoid lapse of the Policy.

The undisputed facts establish that the Earlywines became aware that the terms of

the Policy were different from what they had thought they had purchased no later than Fall 2012. At that point, the Earlywines knew that the Policy would terminate when William was age 78 if they simply continued to make quarterly premium payments of $576. Indeed, William's September 28, 2012, letter implicitly, if not explicitly, threatened legal action as a result of USAA's alleged wrongdoing leaving no doubt that the Earlywines were aware of the claims at that time. That the Earlywines continued to make premium payments that were inadequate to keep the Policy in force through age 95 as they had initially expected did not change the fact that USAA had breached whatever oral or written contract Plaintiff claims was breached and that the Earlywines were injured, and had discovered their injury, at that point, even if the injury was not yet equal to the full death benefit of the Policy.[2] Accordingly, the statute of limitations began to run no later than Fall 2012, meaning the complaint is time-barred.

The continuing violations doctrine argued by Plaintiff does not save her claims from being time-barred. Under California law, the continuing violations doctrine "permits recovery 'for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period [.]'" *Komarova v. National Credit Acceptance, Inc.*, 175 Cal.App.4th 324, 343 (2009) (quoting *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 812 (2001)). Here, the only thing that happened after the Earlywines discovered USAA's alleged wrongdoing is that the Earlywines continued to pay premiums at the same level they had been paying despite USAA's statement that the Policy would eventually expire as a result. The Earlywines' continued premium payments after they discovered this wrongdoing were not a continuing breach of contract or violation of the covenant of good faith and fair dealing *by USAA*.[3] Indeed, it could be argued that

---

[2] The Earlywines' damages as of 2012 conceivably included, *inter alia*, the difference between the actual cash value of the Policy and the cash value they expected it to have as of that time. Thus, this case is distinguishable from *Walker v. Pacific Indem. Co.*, 183 Cal. App. 2d 513 (1960), where the insurance in question was liability insurance that had no cash value.

[3] The unfair competition claim is based on the same allegations and has the same statute of limitations as the breach of contract claim. Therefore, it is also time-barred. As for the good faith and fair dealing claim,

6

USAA would have breached the Policy by refusing the Earlywines' continued premium payments.[4]

The anticipatory repudiation doctrine also does not apply here. The FAC does not allege that USAA breached the written terms of the Policy. Nor does it allege that USAA breached the Policy by not paying the death benefit when William died. Indeed, the FAC does not even allege that USAA repudiated (anticipatorily or not) the Policy. Rather, it alleges that USAA breached various oral representations it made when it sold the Policy to the Earlywines and when they called in 2001 to ask about missing premium payments. Assuming these representations constituted contracts in and of themselves or modified the written terms of the Policy, USAA did not anticipatorily breach the oral contracts or the Policy. Rather, it actually breached them by issuing a Policy that was different from what the Earlywines were allegedly promised, or by requiring increased premium payments to keep the Policy in effect through William's 95th birthday.

Plaintiff's reliance on *Romano v. Rockwell, Int'l*, 14 Cal. 4th 479 (1996) is misplaced. In that case, the California Supreme Court held that a breach of an implied employment contract did not occur, and a claim for breach did not accrue, until the employee was terminated, notwithstanding the company's notice to the employee of the intent to terminate him two years in advance of his last day of work. In contrast, any breach here occurred when USAA did not provide the Earlywines with the Policy they were allegedly told they were getting, or, at the latest, when USAA increased the premiums. USAA's notice to the Earlywines that the premiums were increasing consistent with the terms of the written Policy either put the Earlywines on notice of any past breach, or

---

Plaintiff argues that it could not have accrued until after a denial of benefits under the Policy. However, because the wrongdoing here concerns not a denial of benefits but a requirement of increased premiums purportedly in violation of oral or written policy terms, this argument is inapposite.

[4] The allegations supporting the rescission claim further underscore why the FAC is time-barred. Plaintiff alleges in the alternative that there was no meeting of the minds or a mistake of fact in the formation of the Policy, entitling Plaintiff to rescission. [Doc. No. 7 at ¶¶ 46-47.] The Earlywines were aware of this mistake of fact when they contacted USAA in the Fall of 2012, and therefore could have sought rescission then.

constituted a breach itself.  Either way, it was not an anticipatory repudiation of the Policy.

The opposition cursorily lists a handful of other possible bases why Plaintiff's claims did not accrue prior to cancellation of the Policy.  None of Plaintiff's half-hearted arguments persuade the Court that Plaintiff's claims accrued later than Fall 2012 when USAA informed the Earlywines that the Policy would lapse if their premium payments did not increase.  Accordingly, the statute of limitations expired before Plaintiff filed the original complaint in this action.

**IV.  Disposition**

For the foregoing reasons, Plaintiff's claims are time-barred.  Accordingly, USAA's motion for summary judgment is **GRANTED**.  The Clerk of Court shall enter **JUDGMENT** for USAA and against Plaintiff, and **CLOSE** this case.

It is **SO ORDERED**.

Dated: February 1, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge